**Nos. 22-2106 (L) & 22-2114 (M)**

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

HILEX POLY CO., LLC, SUPERBAG LLC, successor to Superbag Corp.,
UNISTAR PLASTICS, LLC, COMMAND PACKAGING, LLC, successor to
Grand Packaging Inc., d/b/a Command Packaging,
ROPLAST INDUSTRIES INC., US MAGNESIUM LLC,
successor to Magnesium Corporation of America,

*Plaintiffs-Appellants*,

v.

UNITED STATES, TROY MILLER,
Acting Commissioner of U.S. Customs and Border Protection,
UNITED STATES CUSTOMS AND BORDER PROTECTION,

*Defendants-Appellees*.

On Appeal from the United States Court of International Trade,
No. 1:17-cv-00090-TCS, Judge Timothy C. Stanceu

*(Caption continued on inside cover)*

## REPLY BRIEF OF PLAINTIFFS-APPELLANTS

I. Cason Hewgley IV
KING & SPALDING LLP
1100 Louisiana St. Ste. 4100
Houston, Texas 77002

Martha Banner Banks
KING & SPALDING LLP
1180 Peachtree Street NE
Suite 1600
Atlanta, GA 30309

J. Michael Taylor
 *Principal Counsel*
Jeffrey M. Telep
Jeremy M. Bylund
Daniel L. Schneiderman
KING & SPALDING LLP
1700 Pennsylvania Avenue NW
Washington, DC 20006
(202) 737-0500
jmtaylor@kslaw.com

*Counsel for Plaintiffs-Appellants*

April 3, 2023

AMERICAN DREW, AMERICAN OF MARTINSVILLE, BASSETT FURNITURE INDUSTRIES INC., CAROLINA FURNITURE WORKS, INC., CENTURY FURNITURE LLC, dba Century Furniture Industries, HARDEN FURNITURE INC., JOHNSTON TOMBIGBEE FURNITURE MFG. CO., KINCAID FURNITURE CO., INC., L & J G STICKLEY, INC., LA-Z-BOY CASEGOODS, INC., LEA INDUSTRIES, MJ WOOD PRODUCTS, INC., MOBEL INC., PERDUES INC., dba Perdue Woodworks Inc., SANDBERG FURNITURE MFG. CO., INC., STANLEY FURNITURE LLC, successor to Stanley Furniture Co., Inc., T COPELAND AND SONS, INC., TOM SEELY FURNITURE LLC, VAUGHAN-BASSETT FURNITURE COMPANY, INC., VERMONT QUALITY WOOD PRODUCTS, LLC, WEBB FURNITURE ENTERPRISES, INC.,
*Plaintiffs-Appellants*,

v.

UNITED STATES, UNITED STATES CUSTOMS AND BORDER PROTECTION, TROY MILLER, Acting Commissioner of U.S. Customs and Border Protection,
*Defendants-Appellees*.

————————

On Appeal from the United States Court of International Trade, No. 1:17-cv-00086-TCS, Judge Timothy C. Stanceu

————————

**CERTIFICATE OF INTEREST**
*Hilex Poly Co., LLC v. US*, No. 22-2106

Pursuant to Federal Circuit Rule 47.4, counsel for Plaintiffs-Appellants certifies the following:

| 1. Represented Entities. Fed. Cir. R. 47.4(a)(1). | 2. Real Party in Interest. Fed. Cir. R. 47.4(a)(2). | 3. Parent Corporations and Stockholders. Fed. Cir. R. 47.4(a)(3). |
|---|---|---|
| Provide the full names of all entities represented by undersigned counsel in this case. | Provide the full names of all real parties in interest for the entities. Do not list the real parties if they are the same as the entities. | Provide the full names of all parent corporations for the entities and all publicly held companies that own 10% or more stock in the entities. |
| Hilex Poly Co., LLC | None | The parent company of this entity is Novolex Holdings LLC, which in turn is owned by funds managed by Apollo Global Management, Inc. (NYSE: APO), which has a majority interest, and Carlyle Group Inc. (NASDAQ: CG), which has a minority stake. |

| 1. Represented Entities. Fed. Cir. R. 47.4(a)(1). | 2. Real Party in Interest. Fed. Cir. R. 47.4(a)(2). | 3. Parent Corporations and Stockholders. Fed. Cir. R. 47.4(a)(3). |
|---|---|---|
| Superbag LLC, successor to Superbag Corporation | None | The parent company is Five Star Holding LLC. |
| Unistar Plastics, LLC | None | Unistar Plastics, LLC is owned by private company Unistar Industries Inc. |
| Command Packaging, LLC, successor to Grand Packaging Inc., d/b/a Command Packaging | None | The company is now operating as Revolution Consumer Solutions LLC, which is ultimately owned by Revolution Sustainable Solutions, LLC. |
| Roplast Industries Inc. | None | PreZero US, Inc. is the Manager and Sole Member of PreZero US Packaging, LLC (Formally known as Roplast Industries, Inc.). |
| US Magnesium LLC, successor to Magnesium Corporation of America | None | US Magnesium LLC is 100% owned by The Renco Group, Inc. |

4.  The names of all firms and the partners or associates that appeared for the party now represented by me in the trial court or are expected to appear in this Court (and who have not or will not enter an appearance in this case) are:

- Stephen A. Jones

- Neal J. Reynolds

- King & Spalding LLP

5.  The title and number of any case known to counsel to be pending in this or any other court or agency that will directly affect or be directly affected by this court's decision in the pending appeal:

- *American Drew v. US*, No. 22-2114 (Fed. Cir.)

- *Adee Honey Farms v. US*, No. 22-2105 (Fed. Cir.)

6.  The organizational victims and bankruptcy cases applicable to this appeal: N/A.

Date: April 3, 2023

*/s/ J. Michael Taylor*
J. Michael Taylor

*Counsel for Plaintiffs-Appellants*

## CERTIFICATE OF INTEREST
### *American Drew v. US*, No. 22-2114

Pursuant to Federal Circuit Rule 47.4, counsel for Plaintiffs-Appellants certifies the following:

| 1. Represented Entities. Fed. Cir. R. 47.4(a)(1). | 2. Real Party in Interest. Fed. Cir. R. 47.4(a)(2). | 3. Parent Corporations and Stockholders. Fed. Cir. R. 47.4(a)(3). |
|---|---|---|
| Provide the full names of all entities represented by undersigned counsel in this case. | Provide the full names of all real parties in interest for the entities. Do not list the real parties if they are the same as the entities. | Provide the full names of all parent corporations for the entities and all publicly held companies that own 10% or more stock in the entities. |
| American Drew | None | American Drew, Inc. merged with La-Z-Boy Casegoods, Inc. in 2015. American Drew is now a division of La-Z-Boy Casegoods, Inc., a wholly-owned subsidiary of La-Z-Boy Incorporated, a public company. |

iv

| 1. Represented Entities. Fed. Cir. R. 47.4(a)(1). | 2. Real Party in Interest. Fed. Cir. R. 47.4(a)(2). | 3. Parent Corporations and Stockholders. Fed. Cir. R. 47.4(a)(3). |
|---|---|---|
| American of Martinsville | La-Z-Boy Casegoods, Inc. | La-Z-Boy Casegoods, Inc. is a wholly-owned subsidiary of La-Z-Boy Incorporated, a public company. American of Martinsville is now a division of Akin Furniture. |
| Bassett Furniture Industries Inc. | None | None |
| Carolina Furniture Works, Inc. | None | None |
| Century Furniture, LLC, dba Century Furniture Industries | None | The parent company is RHF Investments, Inc. |
| Harden Furniture Inc. | None | None |
| Johnston Tombigbee Furniture Mfg. Co. | None | The parent company of Johnston-Tombigbee Furniture Mfg. Co. is Lounora Industries, Inc. |

| 1. Represented Entities. Fed. Cir. R. 47.4(a)(1). | 2. Real Party in Interest. Fed. Cir. R. 47.4(a)(2). | 3. Parent Corporations and Stockholders. Fed. Cir. R. 47.4(a)(3). |
|---|---|---|
| Kincaid Furniture Company Inc. | None | Kincaid Furniture Company Inc. merged with La-Z-Boy Casegoods, Inc. in 2015 and is now a division of La-Z-Boy Casegoods, Inc., a wholly-owned subsidiary of La-Z-Boy Incorporated, a public company. |
| L & J G Stickley, Inc. | None | None |
| La-Z-Boy Casegoods, Inc. | None | La-Z-Boy Casegoods, Inc. is a wholly-owned subsidiary of La-Z-Boy Incorporated, a public company. |
| Lea Industries | None | Lea Industries, Inc. was merged into La-Z-Boy Casegoods, Inc. in 2015. La-Z-Boy Casegoods, Inc. is a wholly-owned subsidiary of La-Z-Boy Incorporated, a public company. |
| MJ Wood Products, Inc. | None | None |

| 1. Represented Entities. Fed. Cir. R. 47.4(a)(1). | 2. Real Party in Interest. Fed. Cir. R. 47.4(a)(2). | 3. Parent Corporations and Stockholders. Fed. Cir. R. 47.4(a)(3). |
|---|---|---|
| Mobel Inc. | None | None |
| Perdues Inc., dba Perdue Woodworks Inc. | None | None |
| Sandberg Furniture Manufacturing Company, Inc. | None | None |
| Stanley Furniture LLC, successor to Stanley Furniture Company, Inc. | None | None |
| T. Copeland and Sons, Inc. | None | None |
| Tom Seely Furniture LLC | None | Tom Seely Furniture LLC was reorganized into Caperton Furnitureworks LLC d/b/a Tom Seely Furniture LLC. |
| Vaughan Bassett Furniture Company, Inc. | None | None |
| Vermont Quality Wood Products, LLC | None | None |
| Webb Furniture Enterprises, Inc. | None | None |

4.    The names of all firms and the partners or associates that appeared for the party now represented by me in the trial court or are expected to appear in this Court (and who have not or will not enter an appearance in this case) are:

- Stephen A. Jones

- Neal J. Reynolds

- King & Spalding LLP

5.    The title and number of any case known to counsel to be pending in this or any other court or agency that will directly affect or be directly affected by this court's decision in the pending appeal:

- *Hilex Poly Co., LLC v. US*, No. 22-2106 (Fed. Cir.)

- *Adee Honey Farms v. US*, No. 22-2105 (Fed. Cir.)

6.    The organizational victims and bankruptcy cases applicable to this appeal: N/A.

Date: April 3, 2023

*/s/ J. Michael Taylor*
J. Michael Taylor

*Counsel for Plaintiffs-Appellants*

# TABLE OF CONTENTS

CERTIFICATE OF INTEREST ................................................................. i

CERTIFICATE OF INTEREST ............................................................... iv

TABLE OF AUTHORITIES ....................................................................... xi

INTRODUCTION ........................................................................................ 1

FACTUAL BACKGROUND ...................................................................... 4

ARGUMENT ................................................................................................ 6

I.   DOJ's Interpretation Cannot Be Reconciled with the
     Statute's Plain Text or Legislative History. ................................... 6

     A.   DOJ's Interpretation of the Statute Cannot be
          Reconciled with the Basic Rules of Statutory
          Construction. ......................................................................... 7

          1.   DOJ's Interpretation Reads the Word "All" Out
               of the Statute. ................................................................ 8

          2.   DOJ's Interpretation Runs Contrary to
               Grammatical Rules and Was Rejected by the
               Trade Court. ................................................................. 10

          3.   DOJ Reads the Subsections Out of Order. ................. 11

     B.   DOJ Mischaracterizes the Legislative History ..................... 13

II.  Customs's Decision to Impound Delinquency Interest Is
     Owed No Deference. ...................................................................... 15

     A.   Customs's Claim that It Can Impound Delinquency
          Interest Exceeds the Agency's Statutory Authority. ............ 16

     B.   DOJ's Statutory Interpretation Arguments Deserve
          No Deference As They Are Not in the Record Nor the
          Rule. ..................................................................................... 17

          1.   The Government Is Bound by Its Own Record. ........... 18

        2.     DOJ Cites Irrelevant Record Entries Unrelated to Delinquency Interest. ...............................................22

   C.   The Trade Court's Analysis Cannot Save Customs's Failure to Interpret the CDSOA. ..........................................24

        1.     The Trade Court Disagreed with DOJ About Where Ambiguity Exists in the Statute. .....................24

        2.     The Trade Court Cannot Defer to Customs for an Interpretation Customs Did Not Advance..............26

III.  All of Appellants' Claims Are Timely. ...........................................28

   A.   The Final Rule Did Not Supply Notice. ................................29

   B.   The Phrase "At Liquidation" Does Not Preclude Distribution of Delinquency Interest. ...................................30

   C.   The Preamble Cannot Change the Meaning of the Text of the Final Rule. ..........................................................31

        1.     A Single Sentence Tacked on to a Preamble Paragraph About a Different Subject Cannot Confer Notice..............................................................32

        2.     By Reading the Preamble to Preclude Delinquency Interest, DOJ Impermissibly Amends the Rule Using Its Preamble.........................34

CONCLUSION .........................................................................37

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF SERVICE

# TABLE OF AUTHORITIES

## Cases

*Aqua Prods., Inc. v. Matal,*
  872 F.3d 1290 (Fed. Cir. 2017) ............................................................. 25

*Bowen v. Georgetown Univ. Hosp.,*
  488 U.S. 204 (1988) ...................................................................... 10, 18

*Camp v. Pitts,*
  411 U.S. 138 (1973) .............................................................................. 21

*Cathedral Candle Co. v. USITC,*
  400 F.3d 1352 (Fed. Cir. 2005) ........................................................... 22

*Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc.,*
  467 U.S. 837 (1984) .............................................................................. 22

*Christopher v. SmithKline Beecham Corp.,*
  567 U.S. 142 (2012) ........................................................................ 4, 31

*City of Arlington v. FCC,*
  569 U.S. 290 (2013) ................................................................................ 6

*Davis v. Mich. Dep't of Treasury,*
  489 U.S. 803 (1989) .............................................................................. 12

*Demarest v. Manspeaker,*
  498 U.S. 184 (1991) .............................................................................. 27

*Dep't of Com. v. New York,*
  139 S. Ct. 2551 (2019) .......................................................................... 20

*Dominion Res., Inc. v. United States,*
  681 F.3d 1313 (Fed. Cir. 2012) ........................................................... 17

*Encino Motorcars v. Navarro,*
  579 U.S. 211 (2016) .............................................................................. 27

*Gilead Scis., Inc. v. Lee,*
  778 F.3d 1341 (Fed. Cir. 2015) ........................................................... 12

*Heinzelman v. Sec'y of HHS*,
   681 F.3d 1374 (Fed. Cir. 2012) ............................................. 8

*Hymas v. United States*,
   810 F.3d 1312 (Fed. Cir. 2016) ............................................ 35

*Jama v. ICE*,
   543 U.S. 335 (2005) ........................................................ 8, 11

*King v. Burwell*,
   576 U.S. 473 (2015) ............................................................ 17

*MCI Telecomms. Corporation v. FCC*,
   57 F.3d 1136 (D.C. Cir. 1995) .................................. 32, 33, 34

*Mid Continent Nail Corp. v. United States*,
   846 F.3d 1364 (Fed. Cir. 2017) ............................................ 29

*Nat'l Wildlife Fed'n v. EPA*,
   286 F.3d 554 (D.C. Cir. 2002) ...................................... 34, 36

*NLRB v. SW Gen., Inc.*,
   580 U.S. 288 (2017) ........................................................ 8, 12

*Pers. Web Techs., LLC v. Apple, Inc.*,
   848 F.3d 987 (Fed. Cir. 2017) ............................................ 21

*Rubin v. Islamic Republic of Iran*,
   138 S. Ct. 816 (2018) ............................................................ 9

*SEC v. Chenery Corp.*,
   318 U.S. 80 (1943) .................................................. 2, 21, 24, 26

*Thaler v. Vidal*,
   43 F.4th 1207 (Fed. Cir. 2022) ............................................ 25

*Wyeth v. Kappos*,
   591 F.3d 1364 (Fed. Cir. 2010) ............................................ 28

**Statutes**

19 U.S.C. § 1500 .................................................................. 4

19 U.S.C. § 1505.................................................................4, 5, 20, 30

19 U.S.C. § 1673e..................................................................................4

19 U.S.C. § 1673f ..................................................................................5

19 U.S.C. § 1675c(e)(2) (2000),
  *repealed by* Deficit Reduction Act of 2005,
  Pub. L. No. 109-171, 120 Stat. 4 (2006).................................5, 7, 16, 24

28 U.S.C. § 2636................................................................................28

## Regulations

19 C.F.R. § 159.64......................................................................20, 30, 31

66 Fed. Reg. 33,920 (June 26, 2001) ........................................................30

66 Fed. Reg. 48,546 (Sept. 21, 2001).....................................30, 31, 33, 34

Action: Notice of Intent to Distribute Offset
  for Fiscal Year 2016, 81 Fed. Reg. 34,624 (May 31, 2016) ..............3, 28

## Other Authorities

162 Cong. Rec. S843 (daily ed. Feb 11, 2016)
  (Statement of Sen. Thune) ........................................................*passim*

## INTRODUCTION

The Department of Justice ("DOJ") misreads the statute and attempts to rewrite history and Customs's administrative record to justify impounding delinquency interest for the government. But DOJ's interpretation flies in the face of the statute's command to distribute "all interest." DOJ is correct that "Congress kn[ows] how to say 'including all interest,'" Gov't Br. 41, and that is precisely what Congress said: Indeed, Congress used those exact words when describing the interest Customs must distribute to compensate Affected Domestic Producers ("ADPs") like the 26 Appellants in these consolidated cases.[1] Congress's plain meaning controls, and Customs cannot escape it, no matter how many new arguments DOJ throws into its brief on appeal.

First, DOJ attempts to rewrite the statute, doubling down on a textual "interpretation" that was rejected by the Court of International Trade ("Trade Court") because it is grammatically infirm. And DOJ reads the word "all" out of the statute's provisions; despite DOJ's protestations that Appellants are "elevating" the word "all" above other

---

[1] There is also a companion case, No. 22-2105, that will be assigned to the same merits panel. ECF 5.

textual language, Appellants appropriately give meaning to all words in the statute and read the subsections in order, which honors basic statutory canons of construction.  DOJ instead claims that "all" really means the caveated "all 1677(g)" interest, but DOJ then concedes in a footnote that Customs will not actually even distribute all 1677(g) interest in certain circumstances.  Apparently, DOJ's made-for-litigation reading does not even accord with Customs's practice.

Second, even if the text of the statute is ambiguous, Customs is due no deference.  DOJ attempts to rewrite the administrative record. Administrative records exist to hold agencies accountable for *their reasons* for making decisions.  Customs's declarant under penalty of perjury stated that the only reason the agency decided not to distribute delinquency interest was because of a technological limitation.  The agency's reasons in the record are what matter—not DOJ's *post-hoc* arguments.  *SEC v. Chenery Corp.*, 318 U.S. 80, 87 (1943) ("The grounds upon which an administrative order must be judged are those upon which the record discloses that its action was based.").

Third, DOJ attempts to rewrite history, contending that the public was on notice of Customs's decision to impound delinquency interest.  The

administrative record unequivocally refutes this revisionist history. Customs failed for fifteen years to say in its annual distribution notices that it was not distributing delinquency interest. Customs changed course in May 2016 and finally included such language in the distribution notice. *See* Action: Notice of Intent to Distribute Offset for Fiscal Year 2016, 81 Fed. Reg. 34,624 (May 31, 2016). If Customs's prior position on delinquency interest was clear, no such change would have been necessary. Customs also did not communicate its intent to withhold delinquency interest via its rulemaking. Congress did not know what Customs was doing—and certainly did not approve. When Congress found out, it castigated Customs for "ignor[ing] the direction of the statute to pay all interest" thereby "def[ying] the plain language of the statute." 162 Cong. Rec. S843 (daily ed. Feb 11, 2016) (Statement of Sen. Thune) (emphasis added). Customs has no answer to this stinging congressional rebuke.

Moreover, the Supplemental Administrative Record shows that Customs made preparations to distribute delinquency interest. Appx3603–04, Appx7110–11; Appx3672, Appx7179. It did not decide against doing so until after issuing its proposed rule. Appx3603–04,

Appx7110–11; Appx3672, Appx7179.   Customs also concedes that the text of its final rule had no material changes from its proposed rule.  Gov't Br. 49.   So, if Customs itself did not know that the language in its proposed rule excluded delinquency interest, the public surely could not be expected to know.  *Christopher v. SmithKline Beecham Corp.*, 567 U.S. 142, 158–59 (2012) (courts cannot "require regulated parties to divine the agency's interpretations in advance or else be [prejudiced] when the agency announces its interpretations for the first time").

## FACTUAL BACKGROUND

DOJ's brief muddles how antidumping and countervailing duties operate.   When goods are imported, an importer must pay a cash deposit of estimated anti-dumping and countervailing duties, which is placed in a *clearing account*.  19 U.S.C. §§ 1505(a), 1673e(a)(3).  At that point, the only funds that have been paid are the cash deposits representing estimated duties, because duties have not yet been assessed.   After the final duties are calculated and assessed, the entry covered by the cash deposit is "liquidat[ed]," and a statement is sent to the importer showing the difference between the cash deposit rate and the final assessment rate.  *Id.* § 1500(e).  If the deposits exceed assessed duties at liquidation,

4

the excess is refunded to the importer with section 1677g interest on the overpaid amount. *Id.* § 1673f(b)(2). On the other hand, if the final, assessed duties exceed the cash deposits, Customs sends the importer or surety a bill for both the remaining duties and the section 1677g interest on the underpaid amount. *Id.* §§ 1505(b), 1673f(b)(1). If the importer or its surety does not pay the bill within 30 days, Customs charges section 1505(d) interest on the delinquent bill. *Id.* § 1505(d). The cash deposit corresponding with the final, assessed duties covered by the CDSOA is then placed in the *special account* for distribution. *Id.* § 1675c(e)(2) (2000), *repealed by* Deficit Reduction Act of 2005, Pub. L. No. 109-171, 120 Stat. 4 (2006). For duties covered by the CDSOA, late-received duties and interest should also be deposited in the *special account* (the dispute between the parties is whether that interest also includes section 1505(d) interest). *Id.* § 1675c(e)(2), (4). The funds in the special account (which is not interest bearing) are distributed annually to ADPs.

Importantly, whenever section 1677g interest is distributed to ADPs, collection of the interest necessarily took place after liquidation, because the cash deposit represented an underpayment of the assessed duties and 1677g interest, and a portion of the final, assessed duties had

to be collected when a bill was sent to the importer. Accordingly, there is nothing talismanic about whether money was paid or owed "at liquidation" versus "after liquidation" when it comes to what funds must be deposited in the special account and then distributed. Anytime the final, assessed duties exceed cash deposits, section 1677g statutory interest will be collected and deposited into the special account for distribution to the ADPs after liquidation.

## ARGUMENT

### I.    DOJ's Interpretation Cannot Be Reconciled with the Statute's Plain Text or Legislative History.

Because Congress has spoken directly to Customs's obligation to deposit and distribute delinquency interest, Congress's clear intent controls and that is the end of the matter. *City of Arlington v. FCC*, 569 U.S. 290, 296 (2013). The statute unambiguously requires Customs to deposit and distribute all duties and all interest, including delinquency interest, to ADPs. The legislative history supports this plain reading of the text.

**A.    DOJ's Interpretation of the Statute Cannot be Reconciled with the Basic Rules of Statutory Construction.**

The CDSOA plainly requires Customs to distribute "all interest," including delinquency interest, to ADPs.  Subsection (d)(3) directs that Customs "shall distribute *all funds* (including *all interest earned on the funds*) from assessed duties received in the preceding fiscal year to affected domestic producers."  19 U.S.C. § 1675c(d)(3) (emphasis added). The following subsection instructs that Customs "shall deposit into the special accounts, *all* antidumping and countervailing *duties* (*including interest earned* on such duties) that are assessed ... under the antidumping order or finding or the countervailing duty order with respect to which the account was established."    *Id.* § 1675c(e)(2) (emphasis added).  Subsection (e) further clarifies that any ambiguity therein is cured by referral back to subsection (d): "*[c]onsistent with the requirements of subsections (c) and (d) of this section*, [Customs] shall by regulation prescribe the time and manner in which distribution of the funds in a special account shall be made."  *Id.* § 1675c(e)(3) (emphasis added).

Appellants' interpretation honors the foundational canons of construction that (1) all words in the statute be given meaning, *Heinzelman v. Sec'y of HHS*, 681 F.3d 1374, 1379 (Fed. Cir. 2012); (2) grammatical rules be followed, *Jama v. ICE*, 543 U.S. 335, 343 (2005) (rejecting an argument "contrary to the grammatical rule[s]"); and (3) the subsections of the statue be read in order, *NLRB v. SW Gen., Inc.*, 580 U.S. 288, 300 (2017) ("Congress often drafts statutes with hierarchical schemes—section, subsection, paragraph, and on down the line."). DOJ's counter-textual reading cannot be reconciled with the statute.

### 1.    DOJ's Interpretation Reads the Word "All" Out of the Statute.

DOJ argues that instead of requiring Customs to distribute "all interest," the statute shows that Congress intended for Customs to distribute only section 1677g interest and not section 1505(d) interest. Gov't Br. 29.  Nothing in the statute's text supports excluding section 1505(d) interest.

Essentially, DOJ contends that when Congress said "all interest," in the statute, it actually meant all section 1677g interest (or more aptly, only section 1677g interest). Gov't Br. 27–41.  DOJ reads the word "all" out of the statute, violating "one of the most basic interpretive canons,

that [a] statute should be construed so that effect is given to all its provisions, so that no part will be inoperative or superfluous, void or insignificant." *Rubin v. Islamic Republic of Iran*, 138 S. Ct. 816, 824 (2018) (internal quotation marks omitted). And the fact that section 1505(d) interest is in a different statutory section, Gov't Br. 9, is exactly why Congress used the word "all." It makes no difference that section 1505(d) interest can accrue on different kinds of duties in addition to CDSOA duties. *Contra* Gov't Br. 19, 32–33. Notwithstanding Customs's apparent accounting problems, any basic accounting system should be capable of differentiating between delinquency interest "earned" on CDSOA duties and delinquency interest earned on some other source of funds.

In any case, Customs casually concedes in a footnote that *it actually does not even distribute all section 1677g interest.* Gov't Br. 51 n.16. Customs first applies delinquent duty payments to the balance of delinquency interest it deposits into the Treasury. *Id.* When the delinquent payment is less than the full amount owed, Customs is not paying "all duties" and "all" 1677g interest to ADPs. Instead, Customs pays ADPs only the leftover amount after paying delinquency interest to

the Treasury.[2]  Apparently, even Customs does not follow DOJ's made-for-litigation reading of the statute.  That concession is fatal.  The Supreme Court rejects "agency litigating positions that are wholly unsupported by … administrative practice." *Bowen v. Georgetown Univ. Hosp.*, 488 U.S. 204, 212 (1988).

Nor is distributing delinquency interest to ADPs a treble recovery for ADPs.  *Contra* Gov't Br. 41.  As DOJ itself explains, section 1677g and section 1505(d) interest cover different time periods.  Both of those delays harm domestic producers because of the time value of money.  And as Senator Thune noted, Customs's misreading of the CDSOA causes domestic producers "to pay for the delays."  162 Cong. Rec. S843.  Delinquency interest merely makes ADPs whole.

### 2.  DOJ's Interpretation Runs Contrary to Grammatical Rules and Was Rejected by the Trade Court.

DOJ argues that the words "are assessed" in subsections 1675c(d)(3) & (e)(2) are intended to limit interest fixed at the time of liquidation.  The Trade Court rejected this argument, recognizing that

---

[2] It is no answer that Customs follows its own regulation to violate the statutory command.  *Contra* Gov't Br. 51 n.16.  Regulations must yield to statutes.

"assessed" does not modify the term "interest." As the Trade Court explained, DOJ's position fails basic rules of grammar:

> The wording does not support [DOJ's] interpretation: … The subject of the sentence containing the predicate "are assessed" is the plural term "duties," not the singular term "interest." An interpretation that accords with plain meaning should not dispense with agreement between subject and verb.

Appx43 n.7, Appx100 n.7. The Trade Court was correct to honor Congress's grammatical choice. *Jama*, 543 U.S. at 343. DOJ's interpretation of "under" suffers from the same defect. In subsection (e)(2), the plural predicate "are assessed under" modifies the plural subject "duties," and does not modify the singular "interest."

To the extent that DOJ maintains that the time of liquidation is a magical moment that controls what is to be distributed, that is wrong. *See* Gov't Br. 32 ("section 1505(d) interest only arises—if at all—after liquidation"). Such a position ignores that when section 1677g interest is owed to ADPs, the cash deposit was an underpayment before liquidation (meaning that duties and section 1677g interest were paid after liquidation).

### 3. DOJ Reads the Subsections Out of Order.

Focusing on subsection (e), DOJ ignores subsection (d)'s "all interest" language and reads the statute out of order. *See* Gov't Br. 27–

28, 29, 32–33 (starting with subsection (e) and only then referring to subsection (d)). But when the subsections are read in order, and the cross-reference in subsection (e) is given meaning, it is clear that the "all interest" language in subsection (d) controls. *NLRB*, 137 S. Ct. at 938–39 ("Congress often drafts statutes with hierarchical schemes—section, subsection, paragraph, and on down the line."). "It is a fundamental canon of statutory construction that the words of a statute must be read in their context and with a view to their place in the overall statutory scheme." *Davis v. Mich. Dep't of Treasury*, 489 U.S. 803, 809 (1989).

The Court must deploy all the canons of construction to determine the statute's plain meaning. *Gilead Scis., Inc. v. Lee*, 778 F.3d 1341, 1348 (Fed. Cir. 2015). Here, there is no ambiguity when all the words are given meaning and the subsections are read in order. The plain meaning of "all interest" in the parenthetical includes section 1505(d) interest. And DOJ's unfounded assertion that Appellants' reading of "all interest" would include section 1677g interest owed to importers is nonsense. That interest would not have been "earned" on duties, but would be instead *owed* on a deposit overpayment.

## B.     DOJ Mischaracterizes the Legislative History.

DOJ mischaracterizes the legislative history in an attempt to shore up its counter-textual reading.  But the legislative history in fact fatally undermines DOJ's reading.

DOJ first suggests that Senator Byrd approved of Customs's impounding of delinquency interest.  Gov't Br. 33–34.  But the statement DOJ cites does not even reference delinquency interest.  Instead, the statement is about whether distributions to ADPs should be reduced by amounts sent back to importers.  *Id.*  As discussed above, when a cash deposit is overpaid, Customs must pay the importer or surety the overpayment amount, plus section 1677g interest on the overpayment.  Senator Byrd is merely agreeing that the interest paid to the importer or surety should not come out of the corpus of money owed to ADPs.  The statement has nothing to do with delinquency interest.  It is misleading for DOJ to claim otherwise.

DOJ next asserts that a subsequently enacted statute, the Trade Facilitation and Trade Enforcement Act of 2015 ("TFTEA"), somehow vindicates its reading of the CDSOA.  But DOJ fails to inform the court that Congress was forced to pass TFTEA *because* Customs

misinterpreted the CDSOA.  In February 2016, Senator Thune stated on the Senate floor:

> Duties collected on dumped imports and *all interest on those duties* from 2000 to 2007 were intended to be paid to the injured domestic producers to allow them to reinvest and rebuild.  F*or reasons that defy simple explanation, CBP ignored the direction of the statute to pay all interest to producers and instead deducted some types of interest from payments to producers. ...  This practice defies the plain language of the statute* and cost domestic producers tens of millions of dollars over the years.

162 Cong. Rec. S843 (emphasis added).  Senator Thune explained the TFTEA was enacted to "correct[] CBP's misreading of the law."  *Id.* Moreover, in a letter in August 2016, Senators Grassley and Thune voiced their alarm about "the injustice of CBP misinterpreting the underlying statute to deny producers … interest they were due under the [CDSOA]" and emphasized that "[p]roducers are entitled to *all* interest collected on all payments made to CBP."  Appx3062, Appx6569 (emphasis added).

Given the legislative history, it is baffling for DOJ to argue that Congress approved of Customs's actions.  All the evidence suggests the contrary.  And the fact that TFTEA remedies only a portion of Customs's mischief (as to sureties and not importers in a set number of years) is no

reason to ignore that mischief altogether.  After all, as Senator Thune noted, TFTEA was fixing the issue for specific producers.  162 Cong. Rec. S843 (stating that "this practice amounted to forcing … producers to pay for the delays," and was "an important victory for honey, crawfish, garlic, and mushroom [producers]").  That does not in any way bless Customs's injury to other producers harmed by the same mischief.

* * *

The plain and straight-forward reading of the text unambiguously requires Customs to distribute delinquency interest.  After all, Congress designed the CDSOA to compensate domestic producers, not line the pockets of the Treasury.

## II.   Customs's Decision to Impound Delinquency Interest Is Owed No Deference.

Even if the statute is ambiguous about what kind of interest should be distributed, Customs's rule merits no deference to the extent that it prohibits distributing delinquency interest.  The most natural reading of the statute requires Customs to distribute delinquency interest.  The text of the final rule does not conflict with that reading, *see* Part III.B, so they should be read in harmony.  Customs's position that the rule allows it to impound delinquency interest is due no deference because Customs has

not properly exercised any Congressionally delegated authority in advancing such a counter-textual and counter-historical position. DOJ's litigation arguments about why Customs can impound delinquency interest are not supported by the record. The reasons Customs gave for making its decision in the record are the ones that matter, not DOJ's arguments.

### A.     Customs's Claim that It Can Impound Delinquency Interest Exceeds the Agency's Statutory Authority.

The CDSOA grants Customs limited authority over the logistics of fund distribution, permitting the agency to "by regulation prescribe the *time and manner* in which distribution of the funds in a special account shall be made." 19 U.S.C. § 1675c(e)(3) (emphasis added). Nothing in the statute empowers Customs to pick and choose the *contents* of that distribution. Customs simply lacks authority from Congress to withhold delinquency interest. DOJ's contrary assertions about why Customs has authority because of TFTEA are unavailing for the reasons discussed above.

DOJ contends that "Congress delegated to [Customs] the authority to administer the CDSOA," but it ignores the plain limits of that delegation, which is confined to the mechanics of distribution (not the

contents of the distribution). *Contra* Gov't Br. 45. By overlooking section 1675(e)(3), the government fails—yet again—to contend with the clear textual evidence. While DOJ argues that statutory ambiguity created an "implicit" legislative delegation, this theory falls flat. Because the contents of CDSOA distributions go to "the very heart of the Act," "had Congress wished to assign th[is] question to an agency, it surely would have done so expressly." *King v. Burwell*, 576 U.S. 473, 486, 495 n.4 (2015).[3]

Customs lacked authority to decide what interest should be distributed and is due no deference on such a decision.

### B.    DOJ's Statutory Interpretation Arguments Deserve No Deference As They Are Not in the Record Nor the Rule.

Deference is unwarranted for the additional reason that the record contains no evidence that Customs actually interpreted the text of the CDSOA in deciding not to distribute delinquency interest. Instead, Customs was yielding to a technical limitation. DOJ now attempts to

---

[3] Regulations promulgated by implicit delegation via statutory ambiguity are invalid if they conflict with the statute. *See, e.g., Dominion Res., Inc. v. United States*, 681 F.3d 1313, 1317 (Fed. Cir. 2012) (invalidating a regulation that "directly contradict[ed] the ... rule that Congress intended the statute to implement," despite "determin[ing] that the statute [wa]s ambiguous").

rewrite the administrative record and read in a textual interpretation by Customs. DOJ's attempt fails. The Supreme Court held that no deference is owed "to an agency counsel's interpretation of a statute where the agency itself has articulated no position on the question, on the ground that Congress has delegated to the administrative official and not to appellate counsel the responsibility for elaborating and enforcing statutory commands." *Bowen*, 488 U.S. at 212 (internal quotation marks omitted).

### 1.    The Government Is Bound by Its Own Record.

DOJ minimizes the timeline shown in the record and the sworn statement of the agency's declarant. Tellingly, the agency played games with the administrative record. After filing a clearly deficient record, the Trade Court ordered Customs to file a supplemental record after a motion by Appellants. Appx3084–3092, Appx6591–6599. It is no surprise that Customs was not forthcoming with the record, because the supplemental administrative record reveals that Customs initially planned to distribute delinquency interest, but later scrapped those plans *solely* due to technological limitations.

18

**Decisional Timeline:**    By February 2001, before issuing its proposed rule, Customs made internal "work assignments," including an examination of "possible methods for assigning 1505 interest [i.e., delinquency interest] to specific AD/CV cases for purposes of deposit into the Clearing Account and eventual transfer into the Special Account for disbursement." Appx3603–3604, Appx7110–7111.  But by August, after publishing the proposed rule and before publishing the final rule in September, Customs changed its stance without telling the public and decided against distributing delinquency interest.  *See* Appx3672, Appx7179 ("NOTE: Decision has been made that accrued interest for late payment of bill will not be made available for disbursement under Byrd Amendment [CDSOA].").

DOJ asserts, *without any record evidence*, that Customs decided to impound delinquency interest before issuing the proposed rule.  Gov't Br. 49 (criticizing Appellants for arguing that decision not to distribute delinquency interest was made after the proposed rule).  But the government is bound by the record, and DOJ cites *no* record evidence supporting its position.  The August 2001 entry is the earliest expression in the record of Customs's 180-degree change in course from making

19

preparations to distribute delinquency interest to impounding delinquency interest. The administrative record controls the timeline, and DOJ's arguments are incongruent with the record. "[I]f judicial review is to be more than an empty ritual, it must demand something better" than an "explanation … for [an] action that is incongruent with what the record reveals." *Dep't of Com. v. New York*, 139 S. Ct. 2551, 2575–76 (2019).

**Reasons for the Change of Course**: Customs's representative declared under penalty of perjury that "*the only reason*" of which he was aware for the decision not to distribute delinquency interest was a "technological limitation[]" in the agency's computer system, which "was created before the existence of the CDSOA" and could not "identify 19 U.S.C. § 1505(d) delinquency interest on particular line-items in an entry." Appx3099, Appx6606 (emphasis added). The administrative record makes plain that in withholding delinquency interest pursuant to 19 C.F.R. § 159.64(e), Customs was responding to technical constraints, not interpreting the CDSOA.

DOJ asserts that even though Customs's representative averred that "technological limitations" were "*the only reason*" of which he was

aware for Customs's failure to distribute delinquency interest, "this does not mean that [Customs] did not interpret the statutory language." Appx3099, Appx6606; Gov't Br. 48. That remarkable assertion flies in the face of foundational principles of administrative law. "Critically, in order to 'allow effective judicial review, … the agency is obligated to provide an administrative record showing the evidence on which the findings are based, *accompanied by the agency's reasoning in reaching its conclusions.*'" *Pers. Web Techs., LLC v. Apple, Inc.*, 848 F.3d 987, 992 (Fed. Cir. 2017) (emphasis added) (internal quotation marks omitted). This is one of the "basic principles of administrative law." *Id.*; *see also Camp v. Pitts*, 411 U.S. 138, 142 (1973) (per curiam) ("[T]he focal point for judicial review should be the administrative record already in existence, not some new record made initially in the reviewing court."). Accordingly, "[t]he grounds upon which an administrative order must be judged are those upon which the record discloses that its action was based." *Chenery*, 318 U.S. at 87.

DOJ cannot escape the record's clear indications that Customs's decision to impound delinquency interest was unrelated to statutory interpretation, was based solely on pragmatic considerations, and

occurred after the proposed rule's publication.  Because Customs did not engage in any statutory "interpretation" or "construction" regarding delinquency interest, deference to DOJ's interpretation is unwarranted. *Cathedral Candle Co. v. USITC*, 400 F.3d 1352, 1362 (Fed. Cir. 2005) (citing *Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc.*, 467 U.S. 837, 843 (1984)).

### 2.  DOJ Cites Irrelevant Record Entries Unrelated to Delinquency Interest.

Flailing about for any foothold, DOJ cites irrelevant record entries for the first time on appeal.  But the entries do not help DOJ's case, as they do not reference delinquency interest or evince any statutory interpretation.  *First*, DOJ points to a May 2001 draft implementation plan document stating that "[o]nly liquidated amounts associated with each case qualify for distribution."  Gov't Br. 48 (quoting Appx3624).  But as DOJ itself acknowledges, "the draft implementation plan *does not contain any provision for, or mention of, delinquency interest*."  Gov't Br. 48 (emphasis added).  As a result, this passage does not indicate that Customs interpreted the CDSOA to exclude delinquency interest.

*Second*, DOJ points to a January 2001 record entry in which Customs officials "agreed that the appropriate start date to start the

computation of interest is the date of the Commerce determination of assessed duties." Appx3123, Appx6618; *see* Gov't Br. 48. Setting aside the lack of any mention of delinquency interest, this entry cannot help Customs because it was prior to an entry showing that they were planning in February 2001 to distribute delinquency interest. *See* Appx3603–3604, Appx7110–7111 (February 2001 entry noting Customs's exploration of "possible methods for assigning 1505 interest [delinquency interest] to specific AD/CV cases … for disbursement").

*Third,* DOJ points to a draft notice of proposed rulemaking stating that "[w]ithin 60 days after the date that certifications must be submitted pursuant to a notice of distribution, Customs will distribute the assessed duties which constitute the continued dumping and subsidy offset (including any interest earned on the offset)." Appx3155, Appx6662; *see* Gov't Br. 49. But again, this record entry refers primarily to the *timing* of CDSOA distributions, appearing under the heading, "Timing of distribution." Appx3155, Appx6662. And to the extent it refers to the contents of CDSOA distributions, the record entry does not indicate an intent to exclude delinquency interest. The entry merely echoes the CDSOA's command that Customs "distribute all funds (including all

interest earned on the funds) from assessed duties," without specifying what types of interest constitute "interest earned."    19 U.S.C. § 1675c(d)(3); Appx3155, Appx6662.

*Fourth*, DOJ points to comments on Customs's proposed rule by Senators, arguing that these lawmakers approved of how Customs had "interpreted the CDSOA's interest provision." Gov't Br. 50. As discussed at length above, this misleading claim is utterly refuted by context and other Congressional communications.

### C.    The Trade Court's Analysis Cannot Save Customs's Failure to Interpret the CDSOA.

The Trade Court's textual analysis cannot redeem Customs's failure to interpret the CDSOA in the first instance.  It is blackletter administrative law that a court must review the agency's reasons for its actions and cannot substitute its own reasons for those of the agency. *Chenery*, 332 U.S. at 196.

### 1.    The Trade Court Disagreed with DOJ About Where Ambiguity Exists in the Statute.

The Trade Court opinion makes clear that the government incorrectly identified possible ambiguity in the CDSOA.  Here, as below, DOJ argues that the word "assessed" in section 1675c refers to "at liquidation," such that Customs need only distribute interest that

24

accrued up to the point of liquidation, *i.e.*, 1677g interest. *See* Gov't Br. 28, 49, 51, 53; Appx43 & n.7; Appx100 & n.7.[4] As explained above, the Trade Court concluded that the phrase "are assessed" did modify the term "duties" (a plural word), but did not modify the term "interest" (a singular word). Appx43 & n.7, Appx100 & n.7. The Trade Court therefore *rejected* any contention that the CDSOA only requires Customs to distribute interest that is "assessed," *i.e.*, 1677g interest. Appx43 & n.7, Appx100 & n.7.

DOJ continues to press its textual misinterpretation on appeal, arguing that Customs should receive deference. But "deference to misinterpretation of a statute is impermissible." *Aqua Prods., Inc. v. Matal*, 872 F.3d 1290, 1316 (Fed. Cir. 2017). Because the Trade Court

---

[4] DOJ asserts the Trade Court made a "factual finding" concerning Customs's "interpretation of the word 'assessed' as it is used throughout the CDSOA to modify the word 'duties.'" Gov't Br. 51 (citing Appx37). DOJ is wrong that interpreting a statute is a "factual finding." It is clearly a "legal finding" reviewed *de novo*. *Thaler v. Vidal*, 43 F.4th 1207, 1210 (Fed. Cir. 2022) ("Statutory interpretation is an issue of law that we review de novo."), *petition for cert. filed*, No. 22-919 (U.S. Mar. 17, 2023). To avoid any doubt, Appellants reiterate they are challenging any interpretation or practice that stands in the way of Customs distributing "all duties" and "all interest," as the CDSOA requires.

correctly concluded that the government misread the CDSOA, deference is unwarranted.

### 2. The Trade Court Cannot Defer to Customs for an Interpretation Customs Did Not Advance.

The Trade Court's opinion confirms that no deference is due because the Trade Court improperly deferred to its own statutory analysis. After finding ambiguity in a *different* statutory phrase than the government ("interest earned on such duties") the Trade Court "look[ed] beyond the CDSOA to other Tariff Act provisions … for an indication of what Congress may have meant in using" that phrase. Appx45, Appx102. The Trade Court then concluded that Customs's "interpretation was reasonable"—despite having previously determined that Customs misidentified the source of statutory ambiguity. Appx49–50, Appx107–108. In other words, the Trade Court imputed its own statutory analysis to Customs, then afforded deference to Customs for the Court's own analysis.

But under the *Chenery* doctrine, a court may not grant an agency deference for an interpretation the agency did not undertake. *Chenery*, 332 U.S. at 196 ("If [an agency's grounds] are inadequate or improper, the court is powerless to affirm the administrative action by substituting

what it considers to be a more adequate or proper basis."); *Encino Motorcars v. Navarro*, 579 U.S. 211, 224 (2016) (Courts may not "supply a reasoned basis for the agency's action that the agency itself has not given.").  The Trade Court erred by deferring to an interpretation Customs did not advance.

DOJ does not, and cannot, meaningfully contend with the Trade Court's error.  Instead, it recycles the argument that the Trade Court "recognized that CBP made an interpretation of the word 'assessed' … to modify the word 'duties' to reach its reasonable conclusion that only section 1677g interest … would be distributed."  Gov't Br. 53.  But, as explained above, this contention ignores the fact that the Trade Court *rejected* the interpretation that Customs may withhold delinquency interest based on the phrase "are assessed," because that phrase does not modify the word "interest" or restrict the scope of interest to be distributed.  *See also supra* Part II.C.1.  The Trade Court could not have deferred to an interpretation it expressly rejected as contrary to the state's plain language.  *See Demarest v. Manspeaker*, 498 U.S. 184, 190 (1991) ("But administrative interpretation of a statute contrary to language as plain as we find here is not entitled to deference."); *Wyeth v.*

*Kappos*, 591 F.3d 1364, 1372 (Fed. Cir. 2010) ("[I]t is elementary that no deference is due to agency interpretations at odds with the plain language of the statute itself." (internal quotation marks omitted)).

Because the record reveals no coherent statutory interpretation by Customs, the Trade Court erroneously undertook its own analysis, then gave Customs the credit. No deference is warranted by this Court, and the plain meaning advanced by Appellants controls.

## III. All of Appellants' Claims Are Timely.

All of Appellants claims are timely under the two-year statute of limitations governing this action. *See* 28 U.S.C. § 2636(i). The limitations period did not commence until May 2016, when Customs first provided notice of its decision to impound delinquency interest. *See* 81 Fed. Reg. 34,624. Customs did not include a similar statement in any of its distribution notices in the *fifteen prior years*. No one—not the public, not Congress, and not ADPs—knew that Customs was failing to distribute delinquency interest in violation of the CDSOA. If Customs's position had been evident, corrective notice would have been unnecessary. When Congress learned of Customs's conduct, it rebuked the agency. *See* 162 Cong. Rec. S843; Appx3062, Appx6569. And when

Appellants learned of Customs's conduct, they quickly filed suit.  Because Appellants commenced these actions in April 2017, less than two years after receiving notice of Customs's unlawful action, no claims are time-barred.[5]

### A.     The Final Rule Did Not Supply Notice.

DOJ relies on the publication of the final rule in the Federal Register as notice, but that begs the question of whether the final rule adequately explains what the agency was doing.  *See Mid Continent Nail Corp. v. United States*, 846 F.3d 1364, 1374, 1380 (Fed. Cir. 2017) (two publications in the federal register "failed to provide adequate notice" because neither made the agency's intentions "obvious to an interested observer" (internal quotation marks omitted)).  The final rule failed to afford notice of Customs's intent to withhold delinquency interest from ADPs.  *See id.*  Any doubts about the text of the final rule are resolved by comparing it to the proposed rule, which was published when Customs *was preparing to distribute delinquency interest.*

---

[5] Although Appellants' cases are consolidated on appeal, the complaints were filed on different days. Gov't Br. 21 & n.7.  American Drew, et al. filed their complaint on April 18, 2017, and Hilex Poly Co., LLC, et al. filed their complaint on April 20, 2017.  Appx139, Appx3719.

As discussed above, the Supplemental Administrative Record shows that Customs published its proposed rule while still contemplating how to distribute delinquency interest to ADPs. The proposed rule stated:

> statutory interest charged on antidumping and countervailing duties at liquidation, will be transferred to the Clearing Account or Special Account, as appropriate, when collected from the importer.

66 Fed. Reg. 33,920, 33,926 (June 26, 2001).

Nothing in the final rule's text changes the understanding of the proposed rule or precludes the distribution of delinquency interest. It provides:

> statutory interest charged on antidumping and countervailing duties at liquidation will be transferred to the Special Account, when collected from the importer.

66 Fed. Reg. 48,546, 48,554 (Sept. 21, 2001); *see also* 19 C.F.R. § 159.64(e) (codifying the final rule). "Statutory interest" plainly includes delinquency interest, which is available pursuant to 19 U.S.C. § 1505(d). DOJ's counterarguments are unavailing.

## B. The Phrase "At Liquidation" Does Not Preclude Distribution of Delinquency Interest.

DOJ contends that the words "at liquidation" (found in both the proposed and final rule) exclude delinquency interest, which is earned on

funds that remain unpaid thirty days post-liquidation.  Gov't Br. 22.  But as noted, Customs published the proposed rule *while preparing to distribute delinquency interest.*  Part II.B.  Apparently, even Customs was not aware of the import that DOJ now puts on that language.  If Customs did not know that "at liquidation" excluded delinquency interest, and published proposed regulations without that knowledge, the public could not be expected to know that either.  Courts cannot "require regulated parties to divine the agency's interpretations in advance" of the agency.  *SmithKline Beecham Corp.*, 567 U.S. at 158–59.

Moreover, even if the "at liquidation" language does specifically refer to 1677g interest, the final rule merely indicates that Customs will transfer 1677g interest into the special accounts.  It does not state that Customs will fail to distribute other types of interest.

### C.    The Preamble Cannot Change the Meaning of the Text of the Final Rule.

Nor could the final rule's preamble put ADPs on notice of Customs's decision.  A passage in the preamble responded to comments suggesting that the special accounts themselves should bear interest.  *See* 66 Fed. Reg. at 48,550 ("*Comment:* Some commenters suggested, with reference to proposed § 159.64(e), that the Clearing Account and the Special

Account that Customs establishes under the CDSOA should be interest-

bearing accounts."). Customs rejected this suggestion:

> Customs disagrees. Briefly, as previously explained in the notice of proposed rulemaking, funds in Government accounts are not interest-bearing unless specified by Congress. Because Congress did not make an explicit provision for the accounts established under the CDSOA to be interest-bearing, no interest may accrue on these accounts. Thus, only interest charged on antidumping and countervailing duty funds themselves, pursuant to the express authority in 19 U.S.C. 1677g, will be transferred to the special accounts and be made available for distribution under the CDSOA.

*Id.* The preamble, which neither mentions delinquency interest nor cites

section 1505(d), does not express Customs's intent to withhold

delinquency interest. It merely provides that the special accounts

themselves are not interest-bearing.

DOJ seizes upon the word "only" to argue that the preamble notifies

ADPs that delinquency interest would not be distributed. Gov't Br. 23.

This contention fails in two distinct regards.

## 1.   A Single Sentence Tacked on to a Preamble Paragraph About a Different Subject Cannot Confer Notice.

Under *MCI Telecommunications Corporation v. FCC*, 57 F.3d 1136

(D.C. Cir. 1995), the context of this obscure preamble passage prevents it

from supplying adequate notice. In *MCI*, the D.C. Circuit found notice

lacking for three reasons. First, the rule's "substantive sections" did not reference the FCC's decision. *Id.* at 1141. Second, "[t]he problem [wa]s not solely that the notice [wa]s in a footnote, which [wa]s troubling in itself, but also that the footnote in question [wa]s a creature of the 'Background' section." *Id.* at 1142. And third, "the footnote [wa]s appended to a passage that ha[d] nothing to do with" telephone interexchange carriers. *Id.*

These problematic features are equally present here: (1) the substantive portions of the final rule are silent as to delinquency interest, *see* 66. Fed. Reg. at 48,554; (2) the only conceivable reference to delinquency interest is contained in the preamble, under the "Background" heading, *see id.* at 48,546, 48,550; and (3) the relevant preamble passage occurs at the end of a paragraph discussing the entirely separate topic of whether the special accounts themselves would bear interest, *see id.* at 48,550.

DOJ argues that *MCI* "dealt with a footnote … in a notice of proposed rulemaking," whereas here, the relevant language appears not in a footnote, but rather "under a heading titled 'Interest'" in the "Final Rule." Gov't Br. 25. However, in *MCI*, "[t]he problem [wa]s not solely

that the notice [wa]s in a footnote," and nothing in the D.C. Circuit's opinion indicated that the category of regulatory communication (*e.g.*, proposed rule versus final rule) impacted the analysis. 57 F.3d at 1142. Here, moreover, the final rule's "Interest" heading is unrelated to delinquency interest (and even 1677g interest), instead referencing whether the special accounts themselves would bear interest. 66 Fed. Reg. at 48,550. DOJ also notes that in *MCI*, the purported notice occurred "in a background section," whereas here, it occurred "in the preamble." Gov't Br. 25. DOJ is not candid with the Court: the relevant preamble passage indeed falls under the rule's "Background" heading. 66 Fed. Reg. at 48,546, 48,550. *MCI* is directly on point, and under its reasoning, the preamble failed to provide notice of Customs's choice to withhold delinquency interest.

### 2. By Reading the Preamble to Preclude Delinquency Interest, DOJ Impermissibly Amends the Rule Using Its Preamble.

As a matter of law, a preamble cannot alter the meaning of regulatory text. *See Nat'l Wildlife Fed'n v. EPA*, 286 F.3d 554, 569–70 (D.C. Cir. 2002) (per curiam) ("A preamble ... is not an operative part of a statute and it does not enlarge or confer power[]" (internal quotation

marks omitted)); *Hymas v. United States*, 810 F.3d 1312, 1323 (Fed. Cir. 2016) (similar). Because the final rule does not preclude distribution of delinquency interest (as evidenced by the administrative history of Customs's own interpretation), *see supra* Part III.A, its preamble cannot either.

DOJ responds that the preamble merely "provides clarification," suggesting that it does not substantively alter the regulation's meaning. Gov't Br. 23. This suggestion is disingenuous. Customs initially prepared to distribute delinquency interest but, between publishing the proposed and final rules, abandoned these preparations because the agency's computer system could not make the requisite calculations. *See supra* Part II.B.[6]

Problematically, Customs did not inform the public of its decision by changing the text of the final rule. To the contrary, as DOJ concedes, "the Proposed Rule's interest provision is virtually identical to that in the Final Rule." Gov't Br. 49. As a result, DOJ must now rely on the final

---

[6] DOJ weakly contends that Customs did not change course between issuing the proposed and final rules, because the proposed rule and its preamble contain similar references to "liquidation," and thus express an intent to exclude delinquency interest. This argument fails for the reasons explained above in Part III.A.

rule's *preamble* to accomplish what Customs failed to do in the final rule's *body*: exclude delinquency interest. Under DOJ's interpretation, the preamble does not merely clarify the final rule; it functionally amends it. This result is legally impermissible. *See Nat'l Wildlife Fed'n*, 286 F.3d at 569–70.

\* \* \*

The public was not on notice of Customs's decision to impound delinquency interest for the government. Look no further than Congress's vehement reaction, more than fifteen years after the rule was passed, when it learned what Customs was doing. And if Customs did not know what its own rule meant, the public cannot be expected to know either. Because notice was lacking until 2016, all of Appellants' claims are timely.

# CONCLUSION

For the foregoing reasons, this Court should reverse the Trade Court's dismissal of Appellants' claims and decision granting judgment to the government and remand for entry of judgment on the agency record under Rule 56.1 in favor of Appellants on all claims.

Respectfully submitted,

/s/ J. Michael Taylor

| | |
|---|---|
| I. Cason Hewgley IV | J. Michael Taylor |
| KING & SPALDING LLP | *Principal Counsel* |
| 1100 Louisiana Street | Jeffrey M. Telep |
| Suite 4100 | Jeremy M. Bylund |
| Houston, Texas 77002 | Daniel L. Schneiderman |
| (713) 751-3200 | KING & SPALDING LLP |
| chewgley@kslaw.com | 1700 Pennsylvania Avenue NW |
| | Washington, DC 20006 |
| Martha Banner Banks | (202) 737-0500 |
| KING & SPALDING LLP | jmtaylor@kslaw.com |
| 1180 Peachtree Street NE | jtelep@kslaw.com |
| Suite 1600 | jbylund@kslaw.com |
| Atlanta, GA 30309 | dschneiderman@kslaw.com |
| (404) 572-4600 | |
| bbanks@kslaw.com | |

*Counsel for Plaintiffs-Appellants*

April 3, 2023

# CERTIFICATE OF COMPLIANCE

Pursuant to Federal Rule of Appellate Procedure 32(a)(7)(C), the undersigned counsel for Appellants certifies that this brief:

(i) complies with the type-volume limitation of Federal Circuit Rule 32(a) because it contains 6,998 words, including footnotes and excluding the parts of the brief exempted by Federal Circuit Rule 32(b) and Federal Rule of Appellate Procedure 32(f); and

(ii) complies with the typeface and style requirements of Federal Rules of Appellate Procedure 32(a)(5) and 32(a)(6) because this document has been prepared using Microsoft Office Word and is set in 14-point Century Schoolbook font.

Date: April 3, 2023

*/s/ J. Michael Taylor*
J. Michael Taylor

## CERTIFICATE OF SERVICE

I hereby certify that on this 3rd day of April, 2023, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Federal Circuit through the Court's CM/ECF system.

Participants in the case who are registered CM/ECF users will be served by the appellate CM/ECF system.

*/s/ J. Michael Taylor*
J. Michael Taylor